THE O'MARA LAW FIRM, P.C.
DAVID C. O'MARA (Nevada Bar No. 8599)
311 East Liberty Street
Reno, NV 89501
Telephone: 775/323-1321
775/323-4082 (fax)

Attorneys for Protect Our Girls

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| PROTECT OUR GIRLS, a Committee for Political Action (PAC) Advocating Passage, and MELISSA CLEMENT, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>BARBARA CEGAVSKE in her official capacity as Nevada Secretary of State, JOSEPH P. GLORIA in his official capacity as Clark County Registrar of Voters, DEANNA SPIKULA in her official capacity as Washoe County Registrar of Voters, KRISTINA JAKEMAN in her official capacity as Elko County Clerk, SADIE SULLIVAN in her official capacity as Lander County Clerk, LACEY DONALDSON in her official capacity as Pershing County Clerk-Treasurer, VANESSA STEVENS in her official capacity as Storey County Clerk-Treasurer, NICHOLE BALDWIN in her official capacity as White Pine County Clerk, SANDRA MERLINO in her official capacity as Nye County Clerk, TAMMI RAE SPERO in her official capacity as Humboldt County Clerk, KATHY LEWIS in her official capacity as Douglas County Clerk-Treasurer, LINDA ROTHERY in her official capacity as Churchill County Clerk-Treasurer, LACINDA ELGAN in her official capacity as Esmeralda County Clerk-Treasurer, LISA C. LLOYD in her official capacity as Lincoln County Clerk, LISA HOEHNA in her official capacity as Eureka County Clerk, CHRISTOPHER NEPPER in his official capacity as Mineral County Clerk-Treasurer, NIKKI BRYAN in her official capacity as Lyon County Clerk-Treasurer, and AUBREY ROWLATT in her official capacity as Carson City Clerk-Recorder,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Protect Our Girls, a Nevada political action committee ("Protect Our Girls"), Melissa Clement (together "Plaintiffs"), by and through their attorneys of record of the The O'Mara Law Firm, P.C., complain and allege against Barbara Cegavske in her official capacity as Nevada Secretary of State, Joseph P. Gloria in his official capacity as Clark County Registrar of Voters, Deanna Spikula in her official capacity as Washoe County Registrar of Voters, Kristina Jakeman in her official capacity as Elko County Clerk, Sadie Sullivan in her official capacity as Lander County Clerk, Lacey Donaldson in her official capacity as Pershing County Clerk-Treasurer, Vanessa Stevens in her official capacity as Storey County Clerk-Treasurer, Nichole Baldwin in her official capacity as White Pine County Clerk, Sandra Merlino in her official capacity as Nye County Clerk, Tammi Rae Spero in her official capacity as Humboldt County Clerk, Kathy Lewis in her official capacity as Douglas County Clerk-Treasurer, Linda Rothery in her official capacity as Churchill County Clerk-Treasurer, LaCinda Elgan in her official capacity as Esmeralda County Clerk-Treasurer, Lisa C. Lloyd in her official capacity as Lincoln County Clerk, Lisa Hoehna in her official capacity as Eureka County Clerk, Christopher Nepper in his official capacity as Mineral County Clerk-Treasurer, Nikki Bryan in her official capacity as Lyon County Clerk-Treasurer, and Aubrey Rowlatt in her official capacity as Carson City Clerk-Recorder ("Defendants") as follows:

## NATURE OF THE ACTION

1.      This Action arises out of Protect Our Girls proposal to amend an existing state law through a Statewide Statutory Initiative Petition S-04-2020 (the "Initiative") on March 11, 2020. The initiative will amend state law This initiative will prohibit a physician from knowingly performing an abortion upon a minor unless: (1) a custodial parent or guardian of the minor is notified prior to the abortion ("parental notification requirement"); or (2) upon the petition of the minor, a Nevada court authorizes the abortion without parental notification ("judicial bypass"). Presently, a pregnant minor in the state of Nevada can get an abortion without parental notification or authorization by a court. The Nevada legislature passed a parental notification requirement in 1985, but the law was never enforced because a federal court found that its judicial bypass portion was not written appropriately. This initiative addresses this by rewriting the expedited judicial bypass schedule. It also amends law to enhance protection of the minor's privacy. The amended law

provides that a Nevada court may authorize an abortion for a minor without parental notification if the court finds that the minor is sufficiently mature and capable of giving informed consent to the proposed abortion or that the performance of an abortion on the minor without notification of a custodial parent or guardian would be in the minor's best interests.

2. Almost immediately after the Initiative was filed, however, the Covid-19 pandemic ("Pandemic") has cripple the State of Nevada and most of the United States. In response, all levels of the state and federal government have issued social distancing requirements that precluded, and continue to preclude the interpersonal contact necessary to gather sufficient signatures to qualify the Initiative for delivery to the Nevada Legislature using traditional means; Protect Our Children cannot engage in the direct person to person contact necessary to solicit signatures on an initiative circulated by hand as is traditionally done and in the time allotted pursuant to state law.

3. In recognition of this difficulty, Protect Our Children requested relief from the Secretary of State (the "Secretary"), Nevada's chief elections officer. Protect Our Girls requested, on August 18, 2020 that the Secretary (1) extend the deadline for submitting the Initiative for verification for and additional period up to and including December 22, 2020. The SOS denied the request on September 3, 2020.

**PARTIES**

4. Plaintiff Protect Our Girls is a Nevada Committee for Political Action Advocating Passage or Defeat of a Ballot Question registered pursuant to NRS 294A.230. Protect Our Girls filed the Initiative and is advocating for its passage. Protect Our Girls is responsible for circulating the Initiative for signature and otherwise qualifying it for the ballot. Protect Our Girls' address is 311 E. Liberty Street, Reno, Nevada 89501. The interests Protect Our Girls seeks to protect in this action, in addition to the ability to place the Initiative before the Nevada Legislature and/or the Nevada voters, relate to the voting rights of all Nevadans including its supporters and funders, and these interests are germane to Protect Our Girls' purpose.

5. Plaintiff Melissa Clement is a duly registered Nevada voter and resident of Reno, Nevada. She has voted in every election in Nevada since 1984, including voting on ballot questions. She has signed the Initiative. She is also the executive director of the Nevada Right to Life.

6. Defendant Barbara Cegavske ("Secretary of State" or the "Secretary") is the Nevada Secretary of State and is named as a Defendant in her official capacity. Secretary Cegavske is the Chief Officer of elections for the State of Nevada. NRS 293.124(1). Her responsibilities include, but are not limited to, execution and enforcement of all provisions of state and federal law relating to elections, including NRS 295.056. She is further authorized to "provide interpretations and take other actions necessary for the effective administration of the statutes and regulations governing the conduct of primary, general, special and district elections in this State." NRS 293.247(4).

7. Defendant Joseph P. Gloria is the Clark County Registrar of Voters and is sued in his official capacity. He is responsible for implementing certain of Nevada's election laws, and his responsibilities include verifying initiatives. NRS 295.056(1).

8. Defendant Deanna Spikula is the Washoe County Registrar of Voters and is sued in her official capacity. She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives. *Id*.

9. Defendant Kristina Jakeman is the Elko County Clerk and is sued in her official capacity. She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives. *Id*.

10. Defendant Sadie Sullivan is the Lander County Clerk and is sued in her official capacity. She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives. *Id.*

11. Defendant Lacey Donaldson is the Pershing County Clerk-Treasurer and is sued in her official capacity. She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives. *Id.*

12. Defendant Vanessa Stevens is the Storey County Clerk-Treasurer and is sued in her official capacity. She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives. *Id.*

13. Defendant Nichole Baldwin is the White Pine County Clerk and is sued in her official capacity. She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives. *Id.*

14. Defendant Sandra Merlino is the Nye County Clerk and is sued in her official capacity. She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives. *Id.*

15. Defendant Tammi Rae Spero is the Humboldt County Clerk and is sued in her official capacity. She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives. *Id.*

16. Defendant Kathy Lewis is the Douglas County Clerk-Treasurer and is sued in her official capacity. She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives. *Id.*

17. LaCinda Elgan is the Esmeralda County Clerk-Treasurer and is sued in her official capacity. She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives. *Id.*

18. Lisa C. Lloyd is the Lincoln County Clerk and is sued in her official capacity. She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives. *Id.*

19. Lisa Hoehna is the Eureka County Clerk and is sued in her official capacity. She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives. *Id.*

20. Christopher Nepper is the Mineral County Clerk-Treasurer and is sued in his official capacity. He is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives. *Id.*

21. Nikki Bryan is the Lyon County Clerk-Treasurer and is sued in her official capacity. She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives. *Id.*

22. Aubrey Rowlatt is the Carson City Clerk-Recorder and is sued in her official capacity. She is responsible for implementing Nevada's election laws, and her responsibilities include verifying initiatives. *Id.*

## JURISDICTION AND VENUE

23.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 343 because this action arises under the U.S. Constitution and seeks equitable and other relief for the deprivation of constitutional rights under color of state law.

24.     This Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367 because Plaintiffs' state law claims are interrelated with Plaintiffs' federal claims and arise out of a common nucleus of operative fact.

25.     This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. § 2201 and 2202.

26.     This Court has personal jurisdiction over Defendants, who are sued in their official capacities.  The Secretary is a state official who works in Carson City, Nevada.  Joseph P. Gloria is a county official who works in Clark County, Nevada.  Deanna Spikula is a county official who works in Washoe County, Nevada.  Kristina Jakeman is a county official who works in Elko County, Nevada.  Sadie Sullivan is a county official who works in Lander County, Nevada.  Lacey Donaldson is a county official who works in Pershing County, Nevada.  Vanessa Stevens is a county official who works in Storey County, Nevada.  Nichole Baldwin is a county official who works in White Pine, County.  Sandra Merlino is a county official who works in Nye County, Nevada. Tammi Rae Spero is a county official who works in Humboldt County, Nevada.  Kathy Lewis is a county official who works in Douglas County, Nevada.  Linda Rothery is a county official who works in Churchill County, Nevada.  LaCinda Elgan is a county official who works in Esmeralda County, Nevada. Lisa C. Lloyd is a county official who works in Lincoln County, Nevada.  Lisa Hoehna is a county official who works in Eureka County, Nevada.  Christopher Nepper is a county official who works in Mineral County, Nevada.  Nikki Bryan is a county official who works in Lyon County, Nevada.  Aubrey Rowlatt is a local government official who works in Carson City, Nevada.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are State and local officials working in Nevada.  A substantial part of the events giving rise to these claims occurred and continue to occur in this District, making venue also proper under 28 U.S.C. § 1391(b)(2).

**FACTUAL BACKGROUND**

**A.    The Initiative:**

28.    On March 11, 2020, Plaintiff filed Statutory Initiative Petition S0-04-2020pursuant to Article 19, Section 2(3) of the Nevada Constitution.  If the Initiative obtains the necessary signatures, it will be sent to the Nevada Legislature for action, and/or if necessary, placed on the ballot so voters can determine whether to amend Nevada law.

29.    On March 12, 2020, the Secretary of State confirmed the Initiative filing and advised that the "deadline to challenge single subject, description of effect and matters relating thereto for this petition is April 1, 2020." No challenge was filed. In order to qualify the Initiative to be sent to the 2021 Nevada Legislature, and then, if necessary, placed on the ballot,  the Initiative must obtain the signatures of registered voters that equal at least ten percent (10%) of the voters who voted at the last preceding General Election.  Only registered voters of the county and petition district where the petition is circulated may sign the petition.

30.    Under Nevada law, Protect Our Girls have until November 18, 2020, to submit the necessary signatures to the counties for verification.

**B.    The Covid-19 Pandemic**

31.    The Covid-19 Pandemic ("Pandemic") resulted in the near total cessation of public activity in Nevada for many months, and even today, public activity in Nevada is almost no-existent. This necessary public health action is the result of the adoption of guidance by the federal government and adherence to legal directives issue by the Governor of the State of Nevada and precludes public events to only 50 people.

32.    On January 30, 2020, the World Health Organization declared that the novel coronavirus (COVID-19) constitutes a Public Health Emergency of International Concern.  On January 31, 2020, President Donald Trump suspended entry into the United States by all foreign nationals who had traveled to China in the past 14 days.

33.    On February 24, 2020, President Trump asked Congress to allocate $2.5 billion for a COVID-19 response.

34.    On February 25, 2020, the Director of the National Center for Immunization and Respiratory Diseases at the Centers for Disease Control and Prevention ("CDC") announced that

"[d]isruption to everyday life may be severe" as a result of the virus. Regarding the spread, the Director stated that "[i]t's not so much a question of if this will happen anymore but rather more of a question exactly when this will happen," and called upon the American public to "work with us to prepare."

35. On February 26, 2020, CDC officials stated that "[n]on-pharmaceutical interventions or NPIs will be the most important tools in our response to this virus," and that such NPIs included "social distancing measures."

36. On February 27, 2020, the CDC issued further guidance recommending that affected local communities reducing the frequency of large gatherings and limiting the number of attendees.

37. On March 13, 2020, the President declared a national state of emergency regarding COVID-19.

38. The CDC recommends that Americans practice social distancing including maintaining a distance of six feet between persons. On March 16, 2020, the President recommended broad social distancing guidelines for all Americans to "slow the spread" of COVID-19. The guidance was initially for a fifteen-day effective period. On April 2, 2020, President Trump extended the guidance for thirty days.

39. President Trump's social distancing guidelines focus on reducing interpersonal contact of all Americans. His guidelines recommend the following actions, among others:

- Listen to and follow the direction of your **STATE AND LOCAL AUTHORITIES**
- **IF YOU FEEL SICK,** stay home. Do not go to work. Contact your medical provider.
- **IF SOMEONE IN YOUR HOUSEHOLD HAS TESTED POSITIVE** for the Coronavirus, keep the entire household at home. Do not go to work. Do not go to school. Contact your medical provider.
- **IF YOU ARE AN OLDER PERSON**, stay at home and away from other people.
- **IF YOU ARE A PERSON WITH A SERIOUS UNDERLYING HEALTH CONDITION** that can put you at increased risk…, stay home and away from other people.

40.     The President's guidance includes direction specifically for people that are healthy:

- Work or engage in schooling **FROM HOME** wherever possible.

- **AVOID SOCIAL GATHERINGS** in groups of 10 or more people

- Avoid eating and drinking at bars, restaurants, and food courts—**USE DRIVE-THRU, PICKUP, OR DELIVERY OPTIONS**.

41.     On March 12, 2020, Governor Sisolak issued a Declaration of Emergency to facilitate the State's response to the Pandemic.

42.     Since issuing the Declaration of Emergency, Governor Sisolak issued several legal directives consistent with the President's guidelines and the CDC's recommendations, which have drastically limited interpersonal contact in Nevada.

43.     On March 31, 2020, Governor Sisolak issued a "stay at home" order.  In that order, Emergency Directive 010, the Governor extended his March 12, 2020 Declaration of Emergency through April 30, 2020.  He further ordered all Nevadans to stay in their home and not gather socially, subject to certain limited exceptions.

44.     Although Emergency Directive 010 "does not prohibit individuals from engaging in outdoor activity, including without limitation, activities such as hiking, walking, or running," individuals engaging in that activity must comply with Emergency Directive 007, maintain at least six feet distancing from other individuals, and not congregate in groups beyond their household members.  Group of no more than 50 people are now allowed with various restrictions on locations for such events.  Some businesses, like bars and taverns that don't serve food, are closed in Washoe County and Clark County.

45.     The Governor issued Emergency Directive 007 on March 24, 2020.  That order imposed certain social distancing requirements on Nevadans.  Specifically, it provides that, with the exception of persons residing in the same household, Nevadans must "to the extent practicable, abide by social distancing practices by maintaining a minimum six-foot distance between persons in public spaces, whether privately or publicly owned."  It also requires that local governments limit Nevadans use of recreational spaces.  Individuals that violate the social distancing restrictions in the order are subject to criminal and civil penalties.

46.     In addition to the restrictions identified above, Governor Sisolak closed non-essential business, including many retail establishments for a period of time.

47.     Governor Sisolak also ordered the closure of state buildings and other government buildings in Nevada Counties and Cities have also been closed by their local government authority.

48.     Local governments have taken similar action and agreed to use their enforcement authority to enforce the Governor's directives.

49.     On April 29, 2020, Governor Sisolak extended his stay at home order, with limited modifications, through May 15, 2020, and continues to place restrictions on the citizens of Nevada. The Governor's extended directive precludes place of worship from holding events with more than fifty (50) people even though other locations, like casinos and restaurants are allowed to conduct events at 50% capacity

**C.     Signature gathering during the Pandemic**

50.     The Governor's actions make it extremely difficult to collect signatures to qualify the Initiative for the ballot in a traditional in-person manner.

51.     Under normal circumstances, signatures are gathered using a variety of methods, all of which require interpersonal contact inconsistent with the mandated social distancing.  Eligible voters are contacted door-to-door at their homes, in front of places of worship, retail establishments, restaurants and entertainment venues, or in or around government buildings to solicit their interest in signing an initiative.  If, after a brief conversation, an individual is interested in signing the initiative, the person signs the same piece of paper—most likely using the same pen—that others have signed.

52.     Due to the actions by the government, traditional signature gathering is extremely difficult, and it is implausible that Protect Our Girls or any other initiative in Nevada will meet NRS 295.056(2)'s submission deadline.

53.     Nevadans have been ordered to stay at home.  Most government buildings are closed. Restaurants are at 50% capacity, places of worship are restricted to fifty (50) people, and bars and entertainments venues are mostly closed throughout most of Nevada.  Many retail establishments are limited, and citizens are instructed to avoid public places unless it is necessary.  Public events have been canceled *en masse*. A recent political rally for President Donald Trump was cancelled because

the 5,000 requested attendance was in violation of the Governor's directives. People are prohibited from gathering in parks in substantial numbers, and individuals must adhere to the extent practicable to a six-foot social distancing limitation.

54. It is extremely challenging to gather physical ink signatures on hard copy documents in the time allotted as is traditionally done to qualify an initiative for the ballot.

**D. Nevada and other states have taken action to protect political speech in light of COVID-19**

55. On March 24, 2020, the Secretary announced that Nevada would conduct its June 9, 2020 primary election by all mail out of concerns for the health and safety of voters and poll workers related to the Pandemic. In doing so, the Secretary authorized all Nevada voters to vote by absentee ballot and required that all registered voters in Nevada be mailed an absentee ballot. No voter will be required to request an absentee ballot to receive one. However, the Secretary also ordered that one polling place in each county be available to voters accommodate same-day voter registration, as well as assist voters who have issues with the ballot that was mailed to them.

56. In mandating that the primary be conducted by all mail, the Secretary did so despite the fact that an all-mail primary conflicts with certain elements of Nevada law, including NRS 293.272, which requires that most Nevadans who register to vote by mail or computer must, for the first election in which the person votes at which that registration is valid, vote in person unless he or she has previously voted in the county in which he or she is registered to vote. NRS 293.272(1).

57. In addition to taking precautions to safeguard the primary election, the Secretary has suspended in-person transactions at her office and is accepting all election filings electronically.

58. The Governor called a special session of the Nevada Legislature which passed new legislation allowing the general election to be conducted by all mail-in ballots. The 2020 election will not be conducted by mail-in ballots, with the opportunity to vote in person during early voting and on election day.

59. Other jurisdictions in the United States have responded to the Pandemic by changing election processes and rules for elections and initiatives to accommodate political speech in the midst of the Pandemic.

60. Ohio postponed their 2020 primary election until April 28, 2020. Ohio conducted the election almost exclusively by mail and voting centers only opened for people with disabilities to vote in person.

61. On March 25, 2020, a Virginia state court granted a preliminary injunction and ordered a reduction in the number of signatures needed for candidates to enter Virginia's primary election from 10,000 to 3,000. The court found that "the circumstances as they exist in the Commonwealth of Virginia and across the United States are not normal right now," and that the regulations requiring the signatures were not narrowly tailored because they "do[ ] not provide for emergency circumstances, like those that currently exist." *Faulkner v. Va. Dep't of Elections*, No. CL 20-1456, slip op. at 3 (Va. Cir. Ct. Mar. 25, 2020)

62. On April 17, 2020, the Massachusetts Supreme Judicial Court, Massachusetts' highest court, ordered three forms of relief for candidates seeking access to the ballot: first a reduction in the signature requirements by 50%, second an extension of the deadlines for filing of signatures, and third, a requirement that the Secretary of State accept electronic rather than wet-ink original signatures. The court agreed with petitioners that "these extraordinary times of a declared state of emergency arising from the COVID-19 pandemic create an undue burden on prospective candidate's constitutional right to seek elective office." *Goldstein v. Sec'y of Commonwealth*, 142 N.E.3d 560, 564 (Mass. 2020)

63. On April 20, 2020, a federal court in Michigan granted a motion for preliminary injunction reducing the state signature requirement for a candidate to Michigan's Eleventh Congressional District after finding that "the State's actions in the form of enforcing both the Stay-at-Home Order and the statutory ballot-access requirements operate in tandem to impose a severe burden" on the Plaintiff. *Esshaki v. Whitmer*, No. 2:20-cv-10831-TGB, 2020 WL 1910154, at *1 (E.D. Mich. Apr. 20, 2020)

64. On June 8, 2020, the Secretary of State, and other county election officials, filed a Joint Motion with Fair Mapes to enter a Consent Decree. The Court approved the Consent Decree on June 9, 2020.

**E. Nevada Secretary of State and the Initiative**

65. On August 18, 2020, Plaintiff contacted the Secretary and made a request to extend the time to submit the necessary signatures to qualify the Initiative for the ballot and to have it sent to the 2021 Nevada Legislature.

66. On September 3, 2020, the Secretary's office, the Secretary of State denied Protect Our Girls' request.

67. Federal courts evaluating challenges to laws that regulate the election process apply the framework from *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). Under Burdick's balancing and means-end fit framework, strict scrutiny is applied when the First or Fourteenth Amendment rights are subject to "'severe' restrictions." *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1024 (9th Cir. 2016) (*quoting Burdick*, 504 U.S. at 434). However, "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.*

## CAUSES OF ACTION

### I. INITIATIVE VERIFICATION AND EQUAL PROTECTION

#### CLAIM 1: Undue Burden on the Right to Engage in Political Speech (First and Fourteenth Amendments)

68. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

69. The First Amendment and Fourteenth Amendments to the U.S. Constitution enshrine the right of every Nevadan to speech and political expression free from government interference. Circulation of initiative is core political speech. *Prete v. Bradbury*, 438 F.3d 949, 961 (9th Cir. 2006).

70. The challenged restrictions impose a severe burden on Plaintiffs' First Amendment Rights by impeding their ability to advocate for the Initiative and limiting their ability to earn a place for the Initiative on the ballot and place the issue before the 2021 Nevada Legislature. Due to this severe burden, strict scrutiny applies to the challenged restrictions. *Angle v. Miller*, 673 F.3d 1122, 1133 (9th Cir. 2012).

71. In light of the restrictions imposed by the government in response to the Pandemic, requiring that the Initiative be submitted for verification no later than November 18, 2020 cannot withstand strict scrutiny. Doing so is not narrowly tailored to satisfy a compelling government interest.

72. Requiring the Initiative to be submitted for verification by November 18, 2020 will likely unnecessarily preclude the Initiative from being sent to the Nevada Legislature and/or appearing on the ballot during the next election period. More time can—and should be—allotted to collect signatures to ensure Plaintiffs' right to engage in political speech is sufficiently protected and doing so will not compromise the government's interest in ensuring that only verified initiatives are included on the ballot. Even if more time is allotted to gather the required signatures, the county clerks will have sufficient time to verify the Initiative before it is submitted to the Nevada Legislature.

73. The Secretary has taken the necessary action to facilitate an all-mail primary and the Nevada Legislature has just passed legislation to mandate that the General Election be conducted by mail-in ballots, and now, the Secretary of State must similarly do so to protect Plaintiffs' constitutionally protected rights. In refusing to do so, she is violating Plaintiffs' constitutional rights.

74. Absent relief from this Court, requiring the Initiative to be submitted for verification no later than November 18, 2020 will prevent Plaintiffs from engaging in constitutionally protected speech in violation of the First and Fourteenth Amendments to the U.S. Constitution.

75. Plaintiffs will suffer irreparable harm and injury and have no plain, adequate or speedy remedy at law to address the wrongs herein complained of other than this action. A substantial loss or impairment of freedom of expression will continue to occur absent injunctive relief.

**CLAIM 2: Undue Burden on the Right to Engage in Political Speech**
**(Nevada Constitution)**

76. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

77.     Article 1, Section 9 of the Nevada Constitution enshrines the right of every Nevadan to speech and political expression free from government interference. *See Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't,* 100 P.3d 179, 187 (Nev. 2004).  Article 19 (2)(3) provides "If the initiative petition proposes a statute or an amendment to a statute, the person who intends to circulate it shall file a copy with the Secretary of State before beginning circulation and not earlier than January 1 of the year preceding the year in which a regular session of the Legislature is held. After its circulation, it shall be filed with the Secretary of State not less than 30 days prior to any regular session of the Legislature."

78.     Nevadans' right to engage in political speech by circulating a ballot initiative as articulated by the Nevada Constitution is subject to First Amendment analysis. *Univ. & Cmty. Coll. Sys. of Nev.,* 100 P.3d at 187 (concluding that the protections afforded by Article 1, Section 9 and Article 19, Section 2 are subject to First Amendment analysis).

79.     The challenged restrictions impose a severe burden on Plaintiffs' First Amendment Rights by impeding their ability to advocate for the Initiative and limiting their ability to earn a place for the Initiative on the ballot and to have the Initiative sent to the Nevada Legislature for is review. Due to this severe burden, strict scrutiny applies to the challenged restrictions.  *Angle*, 673 F.3d at 1133.

80.     In light of the restrictions imposed by the government in response to the Pandemic, requiring that the Initiative be submitted for verification no later than November 18, 2020 cannot withstand strict scrutiny.  Doing so is not narrowly tailored to satisfy a compelling government interest.

81.     Requiring the Initiative to be submitted for verification no later than November 18, 2020 will likely unnecessarily preclude the Initiative from the ballot and to be presented to the Nevada Legislature.  More time can—and must be—allotted to collect signatures to ensure Plaintiffs' right to engage in political speech is sufficiently protected and doing so will not compromise the government's interest in ensuring that only verified initiatives are included on the ballot.  Even if more time is allotted to gather the required signatures, the county clerks will have

sufficient time to verify the Initiative and it will still be submitted to the Secretary of State within the time allowed by the Nevada Constitution.

82. The Secretary has taken the action necessary to facilitate an all-mail primary and Nevada election officials are now implementing a mail-in ballot General Election, and thus, the Secretary of State must similarly do so to protect Plaintiffs' constitutionally protected rights. In refusing to do so, she is violating Plaintiffs' constitutional rights.

83. Absent relief from this Court, requiring the Initiative to be submitted for verification no later than November 18, 2020 will prevent Plaintiffs from engaging in constitutionally protected speech in violation of the Nevada Constitution.

84. Plaintiffs will suffer irreparable harm and injury and have no plain, adequate or speedy remedy at law to address the wrongs herein complained of other than this action. A substantial loss or impairment of freedom of expression will continue to occur absent injunctive relief.

**CLAIM 3: UNDUE BURDEN ON THE RIGHT TO ENGAGE IN POLITICAL SPEECH (Due Process and 42 U.S.C. §1983)**

85. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

86. The Due Process clause of the U.S. Constitution guarantees the right to due process of law and to equal protection of the laws.

87. The challenged restrictions impose a severe burden on Plaintiffs' First Amendment Rights by impeding their ability to advocate for the Initiative and limiting their ability to earn a place for the Initiative on the ballot and to have the Initiative sent to the Nevada Legislature for review Due this severe burden, strict scrutiny applies to the challenged restrictions. *Angle*, 673 F.3d at 1133.

88. In light of the restrictions imposed by the government in response to the Pandemic, requiring that the Initiative be submitted for verification no later than November 18, 2020 cannot withstand strict scrutiny. Doing so is not narrowly tailored to satisfy a compelling government

interest, especially since the Nevada Constitution only requires the petition "be filed with the Secretary of State not less than 30 days prior to any regular session of the Legislature."

89. Requiring the Initiative to be submitted for verification no later than November 18, 2020 will likely unnecessarily preclude the Initiative from the ballot. More time can—and must be—allotted to collect signatures to ensure Plaintiffs' right to engage in political speech is sufficiently protected and doing so will not compromise the government's interest in ensuring that only verified initiatives are included on the ballot. Even if more time is allotted to gather the required signatures, the county clerks will have sufficient time to verify the Initiative and it will be filed within the constitutional requirement that it be filed not less than 30 days prior to the regular session of the Legislature.

90. The Secretary has taken the action necessary to facilitate an all-mail primary, General Election and entered a Consent Decree to extend the time in Case No. 3:2020-cv-00271, and she must similarly do so to protect Plaintiffs' constitutionally protected rights. In refusing to do so, she is violating Plaintiffs' constitutional rights.

91. Absent relief from this Court, requiring the Initiative to be submitted for verification no later than November 18, 2020 will prevent Plaintiffs from engaging in constitutionally protected speech in violation of the Due Process Clause.

92. Plaintiffs will suffer irreparable harm and injury and have no plain, adequate or speedy remedy at law to address the wrongs herein complained of other than this action. A substantial loss or impairment of freedom of expression will continue to occur absent injunctive relief.

**CLAIM 4: Undue Burden on the Right to Vote**
**(First and Fourteenth Amendments)**

93. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

94. The First Amendment and Fourteenth Amendments to the U.S. Constitution enshrine the right of every Nevadan to vote. *Burdick*, 504 U.S. at 441.

95. The challenged restrictions impose a severe burden on Plaintiffs' First Amendment Rights to vote by impeding their ability to vote on the Initiative on the November ballot. Due this severe burden, strict scrutiny applies to the challenged restrictions. *Angle*, 673 F.3d at 1133.

96. In light of the restrictions imposed by the government in response to the Pandemic, requiring that the Initiative be submitted for verification no later than November 18, 2020 cannot withstand strict scrutiny. Doing so is not narrowly tailored to satisfy a compelling government interest.

97. Requiring the Initiative to be submitted for verification no later than November 18, 2020 will likely unnecessarily preclude the Initiative from the ballot and thus preclude Plaintiffs and other Nevada voters from voting on the measure. More time can—and must be—allotted to collect signatures to ensure Plaintiffs' right to vote is sufficiently protected. Doing so will not compromise the government's interest in ensuring that only verified initiatives are included on the ballot. Even if more time is allotted to gather the required signatures, the county clerks will have enough time to verify the Initiative.

98. The Secretary has taken the action necessary to facilitate an all-mail primary, and she must similarly do so to protect Plaintiffs' constitutionally protected rights. In refusing to do so, she is violating Plaintiffs' constitutional rights.

99. Absent relief from this Court, requiring the Initiative to be submitted for verification no later than June 24, 2020 will prevent Plaintiffs from exercising their right to vote, in violation of the First and Fourteenth Amendments to the U.S. Constitution.

100. Plaintiffs will suffer irreparable harm and injury and have no plain, adequate or speedy remedy at law to address the wrongs herein complained of other than this action. A substantial loss or impairment of freedom of expression will continue to occur absent injunctive relief.

**CLAIM 5: Undue Burden on the Right to Vote**
**(Nevada Constitution)**

101. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

102. Article 2, Section 1 specifically guarantees the rights of Nevadans to vote "upon all questions submitted to the electors" at an election. Nev. Const. art. 2, § 1.

103. The challenged restrictions impose a severe burden on Plaintiffs' right to vote by impeding their ability to vote on the Initiative to be placed on the ballot it the Nevada Legislature rejects the initiative or fails to timely act. Due this severe burden, strict scrutiny applies to the challenged restrictions. *Angle,* 673 F.3d at 1133.

104. In light of the restrictions imposed by the government in response to the Pandemic, requiring that the Initiative be submitted for verification no later than November 18, 2020 cannot withstand strict scrutiny. Doing so is not narrowly tailored to satisfy a compelling government interest.

105. Requiring the Initiative to be submitted for verification no later than November 18, 2020 will likely unnecessarily preclude the Initiative from the ballot and thus preclude Plaintiffs and other Nevada voters from voting on the measure. More time can—and must be—allotted to collect signatures to ensure Plaintiffs' right to vote is sufficiently protected. Doing so will not compromise the government's interest in ensuring that only verified initiatives are included on the ballot. Even if more time is allotted to gather the required signatures, the county clerks will have sufficient time to verify the Initiative.

106. The Secretary has taken the action necessary to facilitate an all-mail primary, an she must similarly do so to protect Plaintiffs' constitutionally protected rights. In refusing to do so, she is violating Plaintiffs' constitutional rights.

107. Absent relief from this Court, requiring the Initiative to be submitted for verification no later than November 18, 2020 will prevent Plaintiffs from exercising their right to vote, in violation of the Nevada Constitution.

108. Plaintiffs will suffer irreparable harm and injury and have no plain, adequate or speedy remedy at law to address the wrongs herein complained of other than this action. A substantial loss or impairment of freedom of expression will continue to occur absent injunctive relief.

**CLAIM 6: Undue Burden on Right to Vote**

**(Due Process and 42 U.S.C. § 1983)**

109.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

110.    The Due Process clause of the U.S. Constitution guarantee the right to due process of law and to equal protection of the laws.

111.    The challenged restrictions impose a severe burden on Plaintiffs' First Amendment Rights to vote by impeding their ability to vote on the Initiative on the November ballot.  Due this severe burden, strict scrutiny applies to the challenged restrictions. *Angle*, 673 F.3d at 1133.

112.    In light of the restrictions imposed by the government in response to the Pandemic, requiring that the Initiative be submitted for verification no later than November 18, 2020 cannot withstand strict scrutiny.  Doing so is not narrowly tailored to satisfy a compelling government interest.

113.    Requiring the Initiative to be submitted for verification no later than November 18, 2020 will likely unnecessarily preclude the Initiative from the ballot.  More time can—and must be—allotted to collect signatures to ensure Plaintiffs' right to engage in political speech is sufficiently protected and doing so will not compromise the government's interest in ensuring that only verified initiatives are included on the ballot.  Even if more time is allotted to gather the required signatures, the county clerks will have sufficient time to verify the Initiative.

114.    The Secretary has taken the action necessary to facilitate an all-mail primary, and all mail general election, and a Consent Decree allowing for a similar extension of time, and she must similarly do so to protect Plaintiffs' constitutionally protected rights.   In refusing to do so, she is violating Plaintiffs' constitutional rights.

115.    Absent relief from this Court, requiring the Initiative to be submitted for verification no later than November 18, 2020 will prevent Plaintiffs from engaging in constitutionally protected speech in violation of the Due Process Clause.

116.    Plaintiffs will suffer irreparable harm and injury and have no plain, adequate or speedy remedy at law to address the wrongs herein complained of other than this action. A

substantial loss or impairment of freedom of expression will continue to occur absent injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Declare that the application of NRS 295.056(2) violates the U.S. Constitution and Nevada Constitution by unduly burdening the initiative process;

2. Issue a temporary restraining order and preliminary injunction enjoining the enforcement of NRS 295.056 for the Initiative for at least so long as the Emergency Directives remain in place, subject to further extensions until 30 days before the start of the 2021 Legislative session;

3. Issue a preliminary injunction extending the deadline to submit an Initiative for verification for at least the same period for which Nevada's stay at home order is in place;

4. Award Plaintiffs their costs, disbursements and reasonable attorneys' fees in bringing this action; and

5. Award such other relief and enter such other orders as necessary and appropriate.

DATED: September 9, 2020

THE O'MARA LAW FIRM, P.C.

/s/ David C. O'Mara
DAVID C. O'MARA, ESQ.

311 E. Liberty Street
Reno, NV 89501
Tel: 775.323.1321