KEVIN BENSON, ESQ.
Nevada State Bar No. 9970
BENSON LAW, LLC.
123 W. Nye Lane, Suite #487
Carson City, NV 89706
Telephone: (775) 884-0838
Email: kevin@bensonlawnv.com

MATTHEW M. GRIFFIN, ESQ.
Nevada State Bar No. 8097
Matthew Griffin, PLLC
401 S. Curry Street
Carson City, NV 89703
Telephone: (775) 882-4002
*Attorneys for Proposed Intervenors*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PROTECT OUR GIRLS PAC, et al.<br><br>Plaintiffs,<br><br>v.<br><br>BARBARA CEGAVSKE, in her official capacity as Nevada Secretary of State, et al.,<br><br>Defendants. | Case No.: 3:20-cv-00515-MMD-WGC<br><br>**MOTION TO INTERVENE** |

The NEVADA RESORT ASSOCIATION PAC, a registered Nevada Political Action Committee, and BIZPAC, a registered Nevada Political Action Committee, by and through counsel, Matt Griffin, Esq. of Matthew Griffin PLLC and Kevin Benson, Esq. of Benson Law, LLC, respectfully move to intervene as defendants in this action pursuant to Fed.R.Civ.P. 24.

**I.   INTRODUCTION**

The Nevada Resort Association PAC ("NRA PAC") and BizPAC (together, "Proposed Intervenors") move to intervene as defendants in this action to protect their interests in preserving the

1

integrity of Nevada's initiative petition process. The Proposed Intervenors take no position on Plaintiff Protect Our Girls PAC's proposed statutory initiative. However, as explained below, Proposed Intervenors are opposed to two other statutory initiatives, and anticipate that the proponents of those petitions will seek the same or similar relief from this Court.

Plaintiff is requesting this Court to enter extraordinary relief to extend the deadline to gather and submit signatures to qualify a statutory initiative. The requested relief, if granted, would intrude on Nevada's constitutional legislative process for consideration of statutory initiatives.

It would also deprive Proposed Intervenors of their statutory rights to challenge the sufficiency of initiative petitions due to errors or fraud, because there simply would not be sufficient time for such a challenge. The inability to bring such a challenge would, in turn, undermine the integrity of the initiative petition process because, pursuant to Nevada law, it is private parties such as Proposed Intervenors, not election officials, who must bring a challenge to correct problems with the petition itself or with circulation issues, like fraudulent signatures.

The Court should therefore grant Proposed Intervenors the ability to intervene as defendants to protect their statutory rights and their interest in the integrity of Nevada's initiative process.

## II.  FACTS

Proposed Intervenor Nevada Resort Association PAC represents gaming and resort properties in Nevada. Declaration of Virginia Valentine, attached hereto as "Exhibit 1." Gaming is, of course, a large part of Nevada's economy. Consequently, initiative petitions that would impact the industry are frequently proposed. *Id.* Part of NRA PAC's core functions is to monitor efforts to qualify ballot measures to ensure that they comply with Nevada's requirements. *Id.* As part of its normal operations, NRA PAC spends resources to monitor initiatives, and to challenge those that do not comply with Nevada law, when it believes it is in the best interest of the association to do so. *Id.* An initiative petition that would increase the gaming taxes on certain properties is currently being circulated. *Id.* NRA PAC challenged that initiative on the basis that it does not comply with the description of effect requirement in NRS 295.009(1)(b). NRA PAC intends to challenge the sufficiency of the gaming tax initiative if there is a basis to do so.

2

Proposed intervenor BizPAC is a political action committee that represents businesses throughout the Las Vegas metropolitan area, including retail businesses. Decl. of Paul Moradkhan, attached hereto as Exhibit 2. A statutory initiative petition proposing a substantial increase in the retail sales tax is currently being circulated. *Id.* BizPAC challenged that initiative on the basis that it does not comply with the description of effect requirement in NRS 295.009(1)(b). BizPAC also intends to challenge the sufficiency of the sales tax initiative if there is a basis to do so. The relief requested by Plaintiff threatens to deprive Proposed Intervenors of their rights under Nevada law to do so.

Nevada, like all states that permit legislation through initiative, imposes various requirements to ensure that the initiative process is fair and that initiatives that are placed on the ballot have legitimately met a certain threshold of voter support. For example, NRS 295.009(1)(a) limits an initiative petition to a single subject. NRS 295.009(1)(b) requires every initiative to contain a description of effect that explains to voters, in an accurate and non-misleading way, what the initiative will do. A third example is NRS 295.012, which requires signatures to be obtained in all of Nevada's congressional districts, to ensure that a statewide initiative truly has statewide support.

However, the Secretary of State and local election officials do not enforce all of these requirements. Compliance with many of Nevada's initiative petition requirements is achieved through challenges filed by private parties. *See e.g.*, NRS 295.061(1) (authorizing an expedited civil action to challenge a petition's compliance with the single subject rule and the description of effect requirement); NRS 295.061(2) (authorizing an expedited civil action to challenge the legal sufficiency of a petition after it is certified as sufficient by the Secretary of State).

Private parties who have an interest in the subject matter of the petition must bring a lawsuit to ensure compliance. For example, even if an initiative petition blatantly violates the single subject rule, if no private party files a challenge, it will be placed on the ballot. Similarly, even if there is a substantial number of fraudulent signatures, a petition can still qualify if no one files a lawsuit that exposes the fraud. However, such suits can be costly. Proposed Intervenors have already expended resources to bring such suits and intend to expend more resources, if necessary, after signatures are submitted for verification. *See* Exhibits 1, 2. If the Court extends the deadline to submit signatures for

all statutory initiatives, Proposed Intervenors are likely to be deprived of their right to bring a sufficiency challenge because there will simply not be enough time for the courts to hear and decide the challenge. Even if the Court extends the deadline only for Plaintiffs' petition, Proposed Intervenors' rights are threatened because it is very likely that the proponents of the gaming tax and sales tax initiatives would quickly file suit, seeking the same relief for the same reasons.

### III.  LEGAL STANDARD FOR INTERVENTION

FRCP 24(a) permits a non-party to intervene as a matter of right upon a showing of four factors: "(1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *United States v. Sprint Communs., Inc.*, 855 F.3d 985, 991 (9th Cir. 2017).

In addition to intervention as a matter of right, FRCP 24(b) allows for permissive intervention. Under FRCP 24(b), the court "may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a common question of law or fact." *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013) (quoting Fed. R. Civ. P. 24(b)(1)). Generally, permissive intervention under Rule 24(b) should be allowed where: (1) there is an independent ground for jurisdiction; (2) the motion is timely; and (3) "a common question of law and fact between the movant's claim or defense and the main action." *Id.*

"Rule 24 traditionally receives liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

### IV.  ARGUMENT

**A.  Proposed Intervenors are entitled to intervention as a matter of right.**

Proposed Intervenors are entitled to intervene as a matter of right because they satisfy all four of the criteria required in this Circuit.

/ / / /

/ / / /

/ / / /

4

1. <u>This Motion is timely.</u>

This Motion is timely because it has been filed only 26 days after the Complaint was filed in this case, and before any of the named defendants have responded. Therefore it will not cause any delay in the proceedings.

2. <u>Proposed Intervenors have a significant protectable interest in the subject of this action.</u>

A person has a "significant protectable interest" in an action if: "(1) [the applicant] asserts an interest that is protected under some law, and (2) there is a 'relationship' between [the applicant's] legally protected interest and the plaintiff's claims." *Sprint*, 855 F.3d at 991. The question of whether there is a "relationship" between the applicant's interest and the plaintiff's claims is intended to be a practical inquiry. *United States v. City of L.A.*, 288 F.3d 391, 398 (9th Cir. 2002). "The 'interest' test is not a clear-cut or bright-line rule, because 'no specific legal or equitable interest need be established.'" *Id.* While not bright-line requirement, the relationship requirement is met if the plaintiff's claims will actually affect the applicant. *Id.*

Proposed Intervenors have legally protected interests in the integrity of Nevada's initiative petition process. These include, but are not limited to, the requirements that signatures be submitted for verification in a timely manner, and the enforcement of the laws that are designed to prevent fraud in signature gathering.

Under Nevada law, each of the county clerks verify a random sampling of the signatures on a statewide petition. The clerks review whether the signer is as registered voter, whether the signature matches the voter's registration file, and whether the signer is a resident of the county, among other things. *See* NRS 293.12757 – 293.12795 (setting forth the process for verification of signatures and determination of sufficiency by the Secretary of State).

Based on their review of a random sample of signatures, the clerks use extrapolation to determine the total number of valid signatures in their respective counties, then forward those numbers to the Secretary of State. NRS 293.1277(2). The Secretary of State then determines whether the petition has sufficient signatures statewide to qualify for the ballot. NRS 293.1278.

NRS 293.12793 provides for an administrative appeal process for the *proponent* of a petition, if the Secretary of State finds that the number of signatures is *insufficient*. There is no similar process for

BENSON LAW NEVADA
123 W. Nye Lane, Suite 478
Carson City, NV 89706
(775) 884-0838

5

an *opponent* to appeal a determination that the number is sufficient. If the Secretary of State determines that the petition is sufficient, the only way to challenge that determination is for a private party to bring a civil action under NRS 295.061(2). Thus, if there was fraud in the circulation process, or if there were errors in the clerks' verification process, the only way to correct those problems is for a private party such as the Proposed Intervenors to bring a lawsuit to expose the issues, and for a court to determine the remedy. *See e.g., Taxpayers for the Prot. of Nev. Jobs v. Arena Initiative Comm*., Nev. Sup. Ct. Nos. 57157, 58350, 2012 Nev. Unpub. LEXIS 1101 (Aug. 1, 2012) (post-circulation challenge based on fraudulent circulator affidavits).

Proposed Intervenors have a substantial interest in this action because extending the deadline to gather signatures would impede or preclude their statutory right to challenge the sufficiency of the petition. NRS 295.056(2) requires that, for statutory initiatives, the deadline to submit signatures for verification is the 15th day following the general election, which falls on November 18, 2020 this year. The Nevada Constitution requires that a statutory initiative must be filed with the Secretary of State no later than 30 days before the start of the legislative session. Nev. Const. Art. 19, § 2(3). This deadline allow each county the time necessary to verify the signatures before the initiative is filed with the Secretary of State.

The Secretary of State then transmits the initiative to the Legislature as soon as it convenes. Nev. Const. Art. 19, § 2(3). "The petition shall take precedence over all other measures except appropriation bills, and the statute or amendment to a statute proposed thereby shall be enacted or rejected by the Legislature without change or amendment within 40 days." *Id.* If the Legislature and the Governor approve the initiative, it becomes law. *Id.*

Consequently, if the deadline is extended to gather signatures, it is very likely that the clerks will not have sufficient time to verify the signatures before the Secretary of State must transmit the initiative to the Legislature in compliance with the Nevada Constitution. Accordingly, as a practical matter, Proposed Intervenors are likely to lose their right to challenge the sufficiency of the petition because there simply would not be enough time. This could allow an initiative to be enacted into law despite fraud or errors in the signatures.

6

These adverse effects on Proposed Intervenors' statutory rights under Nevada law are more than sufficient to meet the "significant protectable interest" requirement for intervention as of right. In *City of L.A.*, the Ninth Circuit found that a police officer's union met this requirement because the complaint sought injunctive relief against its members and alleged facts that its members committed unconstitutional acts in the line of duty. 288 F.3d at 398-99. The court held that this was sufficient even though the proposed injunctive relief applied only to the city defendants, not the union itself. *Id.* Similarly here, even though the Plaintiff is seeking relief against the Secretary of State and the county election officials, Proposed Intervenors stand to lose their own rights under Nevada law if the relief is granted.

### 3. Disposition of the matter without intervention will impair Proposed Intervenor's ability to protect their interests.

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (internal quotations omitted).

As discussed to above, Proposed Intervenors' ability to protect their interests will be impaired if they are not permitted to intervene. They have a right to not be subjected to laws made through a fraudulent or invalid initiative petition, and they also have a right to bring challenges to petitions that fail to comply with Nevada law. These challenges are authorized by NRS 295.061 and are the only method of ensuring compliance with many of Nevada's requirements for initiative petitions.

### 4. The existing Defendants do not adequately represent the Proposed Intervenors' interests.

"The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). The court examines three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* The most important factor is the similarity (or lack thereof) between the interest of the proposed intervenor and that of the existing parties. *Id.*

7

Proposed Intervenors' interests are not adequately represented by the existing parties. As discussed above, many of Nevada's requirements for initiative petitions are not enforced by the Secretary of State, the county elections officials, or any other governmental entity. Instead, monitoring and challenges to the legal sufficiency of petitions is largely left up to private parties.

To illustrate, the county election officials verify signatures by comparing the signature on the petition to the signature in the voter registration file. NRS 293.1277(5). If more than 500 signatures are turned in to that county, a statistical sampling method is used to extrapolate the number of valid signatures based on a random sample. NRS 293.1279. Thus, even though the counties "verify" the signatures, often not every signature is examined. It is possible that a large number of invalid signatures could slip through the cracks.

There can also be errors in the verification process itself, which leads to incorrect sufficiency determinations. For example, a county might count as valid a particular signature that is randomly drawn, even though there is a defect in the document itself, rendering all the signatures on that document invalid. *See Las Vegas Convention & Visitors Auth. v. Miller*, 124 Nev. 669, 689-90, 191 P.3d 1138, 1151 (2008) (holding that it is appropriate to strike all the signatures on a document that contains a defective circulator affidavit).

Additionally, many problems are not apparent to the officials verifying signatures, and would never be corrected if not for parties like Proposed Intervenors investigating and challenging them. For example, in *Taxpayers for the Prot. of Nev. Jobs v. Arena Initiative Comm*., a private party filed a challenge asserting, among other things, that many of the signatures were invalid because the circulators did not personally circulate the petition, as required by NRS 295.0575. The county officials counted the signatures as valid, but the district court found them to be invalid, in light of the evidence the plaintiff produced that in fact the documents were not personally circulated. Nev. Sup. Ct. Nos. 57157, 58350, 2012 Nev. Unpub. LEXIS 1101, at *3 (Aug. 1, 2012). The circulators had lied on their affidavits, but the clerks had no way of knowing about that fraud, and therefore it was not caught during the signature verification process.

Proposed Intervenors also overcome any presumption that the existing government defendants adequately represent their rights. *Cf. City of L.A*., 288 F.3d at 402. The interests and objectives of

8

Proposed Intervenors and the existing Defendants diverge because Proposed Intervenors are seeking to preserve their right and practical ability to challenge invalid petitions or invalid signatures through a process that is never used by the election officials, and could very well be adverse to the election officials. The interests of Proposed Intervenors and the election officials are different because the election officials are primarily seeking to ensure that verification is completed in time to transmit the petition to the Secretary of State, who in turn submits it to the Legislature. The election officials do not have any interest in the merits of any ballot measure, while the Proposed Intervenors have a strong interest at stake.

Because of these divergent interests, the existing Defendants will not make all of the same arguments that Proposed Intervenors will make. Thus Proposed Intervenors can provide necessary input and argument regarding the important role that Nevada law grants to private parties to ensure the integrity of Nevada's initiative process.

For these reasons, Proposed Intervenors should be granted intervention as a matter of right, pursuant to FRCP 24(a).

**B.  Alternatively, Proposed Intervenors should be granted permissive intervention.**

Alternatively, if the Court finds that Proposed Intervenors are not entitled to intervene as a matter of right, it should grant Proposed Intervenors permissive intervention.

Under FRCP 24(b), the court "may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a common question of law or fact." *Blum v. Merrill Lynch Pierce Fenner & Smith Inc*., 712 F.3d 1349, 1353 (9th Cir. 2013) (quoting Fed. R. Civ. P. 24(b)(1)). Generally, permissive intervention under Rule 24(b) should be allowed where: (1) there is an independent ground for jurisdiction; (2) the motion is timely; and (3) "a common question of law and fact between the movant's claim or defense and the main action." *Id.* The first prong, the requirement for an independent ground for jurisdiction, does not apply in federal question cases where jurisdiction is predicated on the plaintiff's claims and the defendant is not bringing any additional claims. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011).

The remaining two prongs of the test are easily met in this case. First, as discussed above, this Motion is timely. Second, there are common questions of law and fact between the Plaintiffs' claims

9

and Proposed Intervenors' defenses. Common questions of law include whether Plaintiffs have standing to bring these claims and whether some of the asserted claims are cognizable claims at all. Common questions of fact include whether Plaintiffs have made reasonable efforts to circulate their petition, whether they have experienced a concrete injury caused by the laws they challenge, and whether the requested relief is likely to actually remedy the alleged harm.

Granting intervention in this case will not unduly delay or prejudice any party. Proposed Intervenors have acted swiftly to intervene. Their proposed Motion to Dismiss is attached as an exhibit to this Motion, and is therefore promptly submitted.

Finally, judicial economy favors granting intervention. If Proposed Intervenors are not able to intervene in this case, they would likely be forced to bring a separate action to protect their interests. That action would involve many of the same issues and therefore it would be a waste of judicial resources compared to intervention.

## V. CONCLUSION

NRA PAC and BizPAC respectfully request that this Court grant their request to intervene as defendants as a matter of right. Alternatively, they request that this Court grant them permissive intervention.

Dated this __6th__ day of October, 2020.

BENSON LAW, LLC

By: _____
KEVIN BENSON, ESQ.
Nevada State Bar No. 9970
123 W. Nye Lane, Suite #487
Carson City, NV  89706
Telephone: (775) 884-0838
Email: kevin@bensonlawnv.com

10

# CERTIFICATE OF SERVICE

Pursuant to FRCP Rule 5(b), I hereby certify that I am an employee of Benson Law, LLC, and that on this date, I caused the foregoing <u>Motion to Intervene</u> to be served to all parties to this action by:

|   |   |
|---|---|
| _____ | Placing a true copy thereof in a sealed postage prepaid envelope in the United States Mail in Carson City, Nevada |
| _____ | Hand-delivery - via Reno/Carson Messenger Service |
| _____ | Facsimile |
| _____ | E-Mail, pursuant to consent to electronic service |
| _____ | Federal Express, UPS, or other overnight delivery |
| _____ | E-filing pursuant to Section IV of District of Nevada Electronic Filing Procedures |
| __X__ | E-filing through the federal courts' CM / ECF filing and service system. |

as follows:

David C OMara
The OMara Law Firm, P.C.
311 E. Liberty Street
Reno, NV 89501
775-323-1321
*Attorneys for Plaintiffs*

Greg Zunino
Office of the Attorney General
100 N. Carson Street
Carson City, Nevada 89701
*Attorneys for Defendant Secretary of State*

Herbert B. Kaplan
One South Sierra Street
Reno, NV 89501
*Attorney for Defendant Spikula*

Mary-Anne M. Miller
Clark County District Attorney
Civil Division
500 S. Grand Central Parkway, 5th Floor
P.O. Box 552215
Las Vegas, NV 89155-2215
702-455-4761
*Attorney for Defendant Gloria*

/ / / /

/ / / /

BENSON LAW NEVADA
123 W. Nye Lane, Suite 478
Carson City, NV 89706
(775) 884-0838

Marquis AurbachCoffing
Brian R. Hardy, Esq.
10001 Park Run Drive
Las Vegas, Nevada 89145
*Attorneys for Defendants Jakeman, Sullivan, Donaldson, Stevens, Baldwin, Merlino, Spero, Lewis, Rothery, Elgan, Lloyd, Hoehne, Nepper, and Bryan*
*(collectively the "Rural County Defendants")*

Dated:     October 6, 2020

_____
An employee of Benson Law, LLC

Benson Law Nevada
123 W. Nye Lane, Suite 478
Carson City, NV 89706
(775) 884-0838

**INDEX OF EXHIBITS**

| Exhibit 1 | Declaration of Virginia Valentine |
|---|---|
| Exhibit 2 | Declaration of Paul Moradkhan |
| Exhibit 3 | (Proposed) Intervenors' Motion to Dismiss |